UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| STACY CALVERT, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | 2:11-CV-00333-LRH-PAL |
| | ) | 2:11-CV-00411-LRH-PAL |
| v. | ) | 2:11-CV-00442-LRH-PAL |
| | ) | 2:11-CV-01004-LRH-PAL |
| ALESSI & KOENIG, LLC, a Nevada Limited Liability Company; DOE individuals 1 through 20 inclusive and ROE corporations 1 through 20 inclusive, | ) ) ) ) | |
| | ) | ORDER |
| Defendants. | ) ) | |

This is a dispute under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a-1692p. Before the court are defendant Alessi & Koenig, LLC ("Alessi & Koenig") and plaintiff Stacy Calvert's cross-motions for summary judgment (#45[1] (Alessi & Koenig), #46 (Calvert)). These motions have both been opposed (##47, 48, 49). Also before the court is Alessi & Koenig's Motion for Judgment on the Pleadings (#25), to which Calvert has responded (#28), and Alessi & Koenig have replied (#30).

**I.   Facts and Procedural History**

Plaintiff Calvert owned residential property in Henderson, Nevada. (Calvert's Motion for Partial Summary Judgment ("MPSJ") #46, Ex. 1.) This property was subject to the covenants, conditions, and restrictions ("CC&Rs") of two homeowners associations ("HOAs"), the Seven

---

[1] Refers to the court's docket number.

1  Hills Master Community Association and the Estates at Seven Hills Owners Association. (*Id*. at
2  Exs. 1, 3.)
3      The HOAs engaged Alessi & Koenig to collect past-due assessments from Calvert. (*Id*.)
4  (The HOAs charge such assessments to homeowners for the maintenance and repair of common
5  areas. Alessi & Koenig's Motion for Summary Judgment ("MSJ") #45, Ex. 1, p. 3; Ex. 2, p. 3.)
6  Alessi & Koenig is a law firm whose business includes collection work. (Calvert's PMSJ #46 at
7  Ex. 6.) On July 19, 2010–and again on November 8, November 11, and December 20–Alessi &
8  Koenig sent a letter to Calvert attempting to collect the past-due assessments. (*Id*. at Ex. 1.) These
9  letters threatened "the initiation of foreclosure proceedings" on Calvert's property unless the
10 assessments were paid quickly. (*Id*.) Three of these letters were captioned "Pre-Notice of Default,"
11 and one letter was captioned "Violation Letter." (*Id*. at Exs. 1-4.) In none of these letters did Alessi
12 & Koenig identify itself as a debt collector.
13     Calvert filed separate actions under the FDCPA protesting these letters on March 2, March
14 17, March 24, and June 20 of 2011.[2] These cases were consolidated on July 10, 2012 (#26). In each
15 case, Calvert has alleged the same violation of the FDCPA as well as the same violation of the
16 Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. ("NRS") § 41.600.

17 **II.    Discussion**

18     The cross-motions for summary judgment both address the core dispute: whether Alessi &
19 Koenig, as a collection agent for homeowners' association fees, is regulated under the FDCPA's
20 section 1692e(11). The court finds that it is.

21     **A. Legal Standard**

22     Summary judgment is appropriate only when "the pleadings, depositions, answers to

23

24  [2] The case captioned 2:11-CV-00333-LRH-PAL protests the July 19 letter. The case captioned
    2:11-CV-00411-LRH-PAL protests the November 8 letter. The case captioned 2:11-CV-00442-LRH-
25  PAL protests the November 11 letter, and the case captioned 2:11-CV-01004-LRG-PAL protests the
    December 20 letter.
26

2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

///

///

///

3

### B. Efforts to Collect Delinquent HOA Assessments Are Regulated under Section 1692e of the FDCPA

The FDCPA targets "abusive, deceptive, and unfair debt collection practices," primarily with respect to consumer debt. 15 U.S.C. §§ 1692. A "debt" is defined as "any obligation . . . to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Section 1692k of the FDCPA provides a private right of action against debt collectors who violate its provisions. For the purposes of the FDCPA, a "debt collector" is expansively defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). Most debt collectors are subject to the full battery of FDCPA regulations, like section 1692e (prohibiting deceptive or misleading statements).

Debt collectors falling under section 1692f(6), however, are subject only to that section's less rigorous provisions. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 362-63 (D. Conn. 2012) (collecting cases). Section 1692f(6), which applies to "debt collectors" attempting to enforce a security interest, prohibits such debt collectors from "taking or threatening to take any nonjudicial action" to dispossess property if there is no present right or intent to take possession of the property.

Courts have agreed that foreclosing on mortgages of real property counts as the enforcement of a security interest for the purposes of section 1692f(6). *Id*. at 363-64 (collecting cases). Authority is sparse, however, on whether efforts to collect on liens created by HOA assessment delinquencies are efforts to enforce a security interest. *Compare Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1066 (D. Minn. 2008) (distinguishing efforts to collect past-due assessments from the enforcement of the HOA's security interest) *with Gray v. Four Oak Court Association, Inc.*,

4

580 F. Supp. 2d 883, 887 (D. Minn. 2008) (holding that lien foreclosure activities stemming from HOA assessments are efforts to enforce a security interest).

Here, the parties do not dispute that the HOA assessments constitute debts and that Alessi & Koenig are principally in the business of collecting delinquent HOA assessments.[3] The question for the court is whether, in sending the four letters giving rise to this suit, Alessi & Koenig was enforcing a security interest. If it was, Alessi & Koenig is subject only to the less rigorous requirements of section 1692f(6).

In the context of foreclosures on real property, the *Derisme* court extensively analyzed the reasons for treating security-interest enforcers and debt collectors differently under the FDCPA. First, the purposes behind the FDCPA support the differing treatment:

> The FDCPA was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have. . . . In contrast to a debt collector, an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property.

*Derisme*, 880 F. Supp. 2d at 362 (quoting *Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 658 (D. Del. 1990)). Second, state foreclosure law provides sufficient protection to the debtor, obviating the need for full-blown FDCPA regulation. "While the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system and [state] foreclosure law." *Id.* at 367.

When the debt collection process masquerades as the foreclosure process, however, the reasons for subjecting the two processes to different regulations fall apart. First, the FDCPA explicitly disapproves of threats to foreclose when there is no "present intention" to do so–in other words, when the threats operate as tools of debt collection rather than of security-interest

---

[3] It has long been settled that attorneys who regularly collect debts may be debt collectors under the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

5

enforcement. 15 U.S.C. § 1692f(6)(B). Second, debtors subject to empty foreclosure threats are not protected by state foreclosure laws. By hypothesis, these empty threats have not engaged the machinery of foreclosure and its attendant protections, leaving the debtor exposed to potential abuse.

Thus, courts have policed the boundary between collection and enforcement under the FDCPA carefully. In doing so, courts have divined a "present intention" to foreclose based on whether the defendant sought money or property and based on whether the defendant took appropriate steps under state foreclosure laws. For example, in *Rousseau v. Bank of New York*, 2009 WL 3162153 (D. Colo. Sept. 29, 2009), the court considered whether an attempt to collect a deficiency judgment from a mortgagor was subject to the FDCPA. The court reasoned that "in contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection." *Rousseau*, 2009 WL 3162153 at *8. And in *Owens*, the court addressed a collection letter that "made no reference to the fact that the delinquency created a lien . . . . Nor did the letter refer to the [] right to foreclose that lien." 550 F. Supp. 2d at 1066. Finding that these omissions indicated that the defendant did not intend to "enforce" the underlying lien, the court subjected the letter to the full scrutiny of the FDCPA. *Id*.

Importantly, the *Owens* court rejected the argument that "whenever a lien is *subject* to foreclosure, any attempt to collect the debt creating the lien must be 'enforcement' of the corresponding security interest." *Id*. Such a "broad reading" clashes with the remedial purposes of the FDCPA. *Id*. Instead, the court held that efforts to collect a delinquent assessment where the debt collector was not "actively engaged in an attempt to dispossess the plaintiff of secured property" were not efforts to enforce a security interest. *Id*. Therefore, they were efforts to collect a debt subject to (among other provisions) section 1692e of the FDCPA.

In light of the *Owens* holding, Alessi & Koenig are subject to section 1692e so long as they were not "actively engaged in an attempt to dispossess [Calvert] of secured property." The Nevada

6

statutes governing HOA lien enforcement contemplate (1) the mailing of a "notice of delinquent assessment" describing the amount of the assessment due, the unit against which the lien is imposed, and the name of the record owner of the unit; (2) the recording of a notice of default and election to sell the unit no earlier than thirty days following the notice of delinquent assessment; and (3) a ninety day waiting period. NRS § 116.31162. Here, the document captioned "Violation Letter," including a "Notice of Violation (Lien)," comports with the requirements of a "notice of delinquent assessment." It is thus part of the lien enforcement process and subject to the lighter regulation of FDCPA section 1692f(6). On the other hand, the letters captioned "Pre-Notice of Default" did not perform a function under the Nevada lien enforcement regime.[4] Therefore, these documents were not part of the process of enforcing the HOAs' liens under Nevada law. And if these documents were not part of that process, they were part of the debt collection process subject to the full battery of FDCPA provisions.

Alessi & Koenig argue that the "Pre-Notice of Default" letters are a legitimate step in the lien enforcement process because Nevada Administrative Code § 116.470 refers to "intent to notice default" letters. This regulation is a schedule of permissible fees that HOAs may charge "to collect a past due obligation," and one of the fees is associated with an "intent to notice default letter." But there is reason to doubt that this fee schedule is an administrative interpretation of the steps involved in enforcing a security interest under Nevada law. First, the regulation specifically addresses "fees and costs for collection of past due obligations of unit's owner"–fees for the collection of a debt, not the enforcement of a security interest. Second, while the fee schedule includes fees for "conduct[ing a] foreclosure sale," it also includes allowable fees for mailing a notice, for "[b]ankruptcy package preparation and monitoring," and for a bounced check. Thus, regulation 116.470's fee schedule does not impose additional requirements on the statutory foreclosure process.

---

[4] These letters appear to follow step one of the statutory regime and precede step two.

7

There is an inescapable air of artificiality in dividing debt collection efforts from good-faith threats to enforce a security interest by focusing on the steps required under the law of foreclosure. This slight artificiality is warranted, however, where the alternative is a loophole in which "whenever a lien is *subject* to foreclosure, any attempt to collect the debt creating the lien must be 'enforcement' of the corresponding security interest" and therefore exempt from most of the FDCPA. *Owens*, 550 F. Supp. 2d at 1066. The potential for abuse of this loophole is exemplified by the facts of this case: Alessi & Koenig issued at least two of the "Pre-Notice of Default" letters in succession before taking additional steps under the foreclosure laws. Furthermore, focusing on the steps of the foreclosure process under state law provides an objective gauge of the defendant's "present intention" to dispossess property and thus a reasonable way to give legal teeth to this provision of section 1692f(6). Finally, the costs of complying with the FDCPA are low and FDCPA disclosures are appropriate where, as here, the defendant attempts to collect HOA assessments that are more in line with garden-variety consumer debt than with mortgage interests. *See Newman v. Boehm, Pearlstein, & Bright, Ltd.*, 119 F.3d 447, 481 (7th Cir. 1997) (holding of HOA assessments that "there can be little doubt that [they] had a personal, family, or household purpose"). Therefore, the court concludes that Alessi & Koenig engaged in efforts to collect a debt subject to all of the provisions of the FDCPA (including section 1692e) when it sent Calvert the "Pre-Notice of Default" letters.

### C.  The "Pre-Notice of Default" Letters Violated Section 1692e(11)

Section 1692e(11) of the FDCPA provides that in both initial and subsequent communications to a debtor, the debt collector must disclose "that the communication is from a debt collector." The purposes behind the FDCPA require "a liberal construction of § 1692e(11) so as to protect the least sophisticated consumer." *Costa v. National Action Financial Services*, 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007) (quotation marks and citation omitted). Courts have tended to enforce section 1692e strictly. *See, e.g., Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1189 (W.D. Wash. 2011); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1081 n. 8 (E.D. Cal. 2008). *See*

*also Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1353 (N.D. Ga. 2008) ("[The debt collector] may not agree that its conduct was false, deceptive, or misleading. But its undisputed conduct is defined as such, and thus prohibited, under the statute."); *Drossin v. National Action Fin. Services, Inc.*, 641 F. Supp. 2d 1314, 1319 (S.D. Fla. 2009) ("The provisions of the FDCPA are clear that in initial or *subsequent* communications, it must be disclosed that the communication is from a debt collector."). This includes subsection (11). *Lensch*, 795 F. Supp. 2d at 1189; Schwarm, 552 F. Supp. 2d at 1081.

Here, the "Pre-Notice of Default" letters are undisputedly non-initial communications. Alessi & Koenig point out that the letters "plainly disclose that Alessi & Koenig is a law firm acting on behalf of the [HOAs] with respect to the associations' lien for past due assessment payments and or [sic] unpaid fines." (Alessi & Koenig's Motion to Dismiss #45, p. 19:18-21.) But these disclosures are not, individually or collectively, disclosures that Alessi & Koenig is a debt collector. Therefore, Alessi & Koenig's "Pre-Notice of Default" letters violate section 1692e(11).

### D.  Alessi & Koenig is Not Exempt from the FDCPA

Alessi & Koenig also argue that, in Nevada, disputes over HOA assessments are subject to mandatory mediation or arbitration prior to the filing of a suit. NRS § 38.310(1). This requirement also applies to collection agents for HOAs like Alessi & Koenig. *Hamm v. Arrowcreek Homeowners' Association*, 183 P.3d 895, 898 (Nev. 2008). Since Calvert did not previously exhaust the mediation or arbitration requirement, Alessi & Koenig contend, this court lacks subject matter jurisdiction over her claims. *See Taulli v. Rancho Nevada-Nevada Estates Homeowners Association, Inc.*, 2012 WL 2105889 at *3 (D. Nev. June 8, 2012) (dismissing plaintiff's FDCPA claim for failure to exhaust the requirements under NRS § 38.310(1)). In response, Calvert claims that NRS § 38.310(1) is inapplicable.

NRS 38.310 provides that "[n]o civil action based upon a claim relating to . . . (b) the procedures used for increasing, decreasing, or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to

9

mediation or arbitration." Here, however, Calvert is objecting to Alessi & Koenig's collection practices–specifically their violation of section 1692e(11). This is not a dispute about the increase, decrease or imposition of additional assessments. Indeed, Calvert's claims relate specifically to the practices used to collect *undisputed* assessments.[5] Furthermore, this is not a case requiring the court to "interpret the CC&Rs' meaning to determine whether . . . [the HOA's] assessment was proper." *Hamm*, 183 P.3d at 900. Therefore, NRS § 38.310(1) is inapplicable to Calvert's actions.[6]

### E.  Alessi & Koenig Is Not Liable under the NDTPA

Calvert's second and final claim is that Alessi & Koenig have violated the Nevada Deceptive Trade Practices Act by failing to obtain a license as a collection agency. The definition of "Collection Agency" includes "all persons engaging, directly or indirectly, and as a primary or a secondary object, business or pursuit, in the collection of or in soliciting or obtaining in any manner the payment of a claim owed or due or asserted to be owed or due to another." NRS § 649.020(1). However, "attorneys . . . retained by their clients to collect or to solicit or obtain payment of such clients' claims in the usual course of the practice of their profession" are exempt from this definition. NRS § 649.020(2)(g).

The Nevada Department of Business and Industry's Financial Institutions Division ("FID") has issued an advisory opinion on whether attorneys holding themselves out as debt collectors must obtain a license. The FID concluded

> The exemption from NRS Chapter 649 applies if the Nevada licensed attorney is identified as an attorney or law firm, and offers or performs collection services as a primary or secondary part of the legal representation. The determining factor is whether or not the client intends to form an attorney-client relationship.

FID, *Attorneys Acting as Collection Agencies* (March 22, 2012), *available at* http://fid.state.nv.us/ AdvisoryOpinion/2012/2012-03-22_OPINION_AttorneyActingAsCollectionAgency.pdf (last

---

[5] Or, at least, Calvert has not disputed the assessments here.

[6] Accordingly, the court does not reach Calvert's alternative argument that the FDCPA preempts NRS 38.310(1).

10

accessed Feb. 6, 2013). The FID's opinion rests in large part on section 649.020's legislative history: prior to 2007, section 649.020(g) exempted "attorneys . . . retained by their clients to collect or to solicit or obtain payment of such clients' claims in the usual course of the practice of their profession *and the collection, solicitation or obtainment is incidental to the usual course of the practice of their profession*. *See* Assembly Bill 47, 74th Leg., Reg. Sess. (Nev. 2007) (emphasis added). In 2007, Assembly Bill 47 deleted the "incidental" language, suggesting that the attorney exemption applies even when debt collection is the primary purpose of legal representation.[7]

The FID's opinion is persuasive. Calvert responds with an earlier advisory opinion by the Nevada Attorney General averring that "[law firms] exclusively engaged in the processing of [lien] foreclosures is attempting to collect a debt . . . . [S]uch a [firm] is not exempted from the definition of a collection agency [and] must obtain a collection agency license." 1999 Nev. Op. Att'y Gen. 211 (1999).[8] However, this interpretation predates two germane amendments to section 649.020–amendments that add and then delete the "incidental" language. *Compare* Senate Bill 431, 73d Leg., Reg. Sess. (Nev. 2005) *with* Assembly Bill 47. Therefore, the Attorney General's advisory opinion does not reflect an interpretation of the controlling statute.

### III. Conclusion

Alessi & Koenig is subject to the FDCPA's section 1692e for the purposes of its "Pre-Notice of Default" letters. It is not subject to the NDTPA.

IT IS THEREFORE ORDERED that Alessi & Koenig's Motion for Judgment on the Pleadings (#25) is DENIED as moot.

---

[7] The legislative history behind the attorney exemption is complicated. Though this history comports with the FID's conclusion, it appears that the Bill last passed by the Legislature and approved by the Governor is not the Bill reported in the Nevada Revised Statutes. *Compare* Assembly Bill 47 *with* Assembly Bill 431, 74th Leg., Reg. Sess. (Nev. 2007). The culprit is likely a copy-and-paste error caught and corrected by the Legislative Counsel. *See* NRS § 220.120.

[8] Alessi & Koenig's argument that this advisory opinion does not apply to law firms is meritless. The opinion analyzes the law's treatment of attorneys in order to formulate similar rules for "property management firms."

IT IS FURTHER ORDERED that Alessi & Koenig's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion for Summary Judgment (#45) is GRANTED as to the NDTPA claim and DENIED as to the FDCPA claim.

IT IS FURTHER ORDERED that Calvert's Motion for Partial Summary Judgment (#46) is GRANTED. The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 12th of February, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE