UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| STACY CALVERT, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | 2:11-CV-00333-LRH-PAL |
| | ) | 2:11-CV-00411-LRH-PAL |
| v. | ) | 2:11-CV-00442-LRH-PAL |
| | ) | 2:11-CV-01004-LRH-PAL |
| ALESSI & KOENIG, LLC, a Nevada Limited Liability Company; DOE individuals 1 through 20 inclusive and ROE corporations 1 through 20 inclusive, | ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a dispute under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a-1692p. Before the court are plaintiff Stacy Calvert and defendant Alessi & Koenig, LLC's ("Alessi & Koenig") cross-motions for damages and attorney's fees [#54[1] (Calvert), #55 (Alessi & Koenig)]. Both parties have responded (##56 and 57, respectively) and replied (##59 and 58, respectively).

**I.      Facts and Procedural History**

Plaintiff Calvert owned residential property in Henderson, Nevada, subject to the covenants, conditions, and restrictions ("CC&Rs") of two homeowners associations ("HOAs"). After falling behind on the dues she owed to the HOAs, the HOAs engaged Alessi & Koenig, a law firm, to collect these dues. Alessi & Koenig sent Calvert four different letters threatening foreclosure on

---

[1] Refers to the docket number in base case 2:11-CV-00333-LRH-PAL.

account of Calvert's debts, and Calvert filed a separate complaint under the FDCPA for each letter.[2] In each case, Calvert also alleged violations of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. ("NRS") § 41.600.

The court consolidated these four cases and, on February 13, 2013, granted partial summary judgment to each party (#51). Calvert prevailed on three of her FDCPA claims, and Alessi & Koenig successfully defeated one of Calvert's FDCPA claims and all of her NDTPA claims. On February 27, 2013, both parties moved for attorney's fees. Calvert has also requested statutory damages under the FDCPA.

**II.    Discussion**

Under the FDCPA, a prevailing individual plaintiff is entitled to "actual damage" and statutory damages "not exceeding $1,000." 15 U.S.C. § 1692k(a). The appropriate damages award is determined by considering the following non-exclusive list of factors: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Here, Calvert requests statutory damages in the amount of $1,000 for each of her successful FDCPA claims (for a total of $3,000). Alessi & Koenig does not dispute the propriety of statutory damages but instead argues that Calvert's four lawsuits were duplicative. The court agrees.

Courts have uniformly held that the FDCPA's $1,000 statutory damages cap applies to individual *suits*, not individual *violations*. *See, e.g.*, *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1994); *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992). Calvert's attempt to circumvent this cap by filing a separate case for each violation therefore contravenes the FDCPA's mandate. The language of § 1692k(b)(1) confirms this conclusion:

---

[2] The case captioned 2:11-CV-00333-LRH-PAL protests a July 19, 2010 letter. The case captioned 2:11-CV-00411-LRH-PAL protests a November 8, 2010 letter. The case captioned 2:11-CV-00442-LRH-PAL protests a November 11, 2010 letter, and the case captioned 2:11-CV-01004-LRG-PAL protests a December 20, 2010 letter.

2

section 1692k(b)(1) directs courts to evaluate the "frequency and persistence" of FDCPA violations in arriving at the damages cap, envisioning one suit for "frequen[t] and presisten[t]" violations.

Furthermore, Calvert's four separate cases run into the bar on claim splitting. The doctrinal bar against claim splitting prevents "a defendant from being harassed by repetitive actions based on the same claim." *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (citation omitted). The Ninth Circuit applies the test for claim preclusion to determine if the bar against claim splitting applies. *Adams v. California Dep't of HealthServs.*, 487 F.3d 684, 688-89 (9th Cir. 2007). This test examines "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same" in determining if a subsequent complaint is duplicative and therefore precluded. *Id*. at 689. Courts use the "transaction test" to ascertain whether successive causes of action are the same, inquiring whether two events "are related to the same set of facts and whether they could conveniently be tried together." *Id*. Most important in this inquiry is that the causes of action arise "from a common transactional nucleus of facts." *Id*. In the context of claim splitting, the prior action need not have reached final judgment; rather, the court asks *if* the first suit were already final, could the second suit "be precluded pursuant to claim preclusion." *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002).

Here, Calvert's four complaints arise out of the same "transactional nucleus of facts." Each complaint relates to the same debt and the same effort to collect that debt. Each complaint alleges the same causes of action. And each complaint requests the same remedy. Thus, while each complaint addresses a separate communication from Alessi & Koenig with respect to Calvert's debt, the cases concern the same "transactional nucleus of facts." They are therefore subject to the bar on claim splitting, which means that Calvert has successfully brought one suit alleging four violations of the FDCPA, not four suits each alleging a single violation. Since the FDCPA's damages cap applies to suits, not violations, Calvert may recover at most $1,000. *Wright*, 22 F.3d at 650. In light of Alessi & Koenig's repeated violations, a $1,000 recovery is appropriate.

Calvert has also moved for costs and attorney's fees under 15 U.S.C. § 1692k(a)(3). "The FDCPA's statutory language makes an award of fees mandatory" in part because Congress chose a "private attorney general approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations and quotation marks omitted). District courts begin their calculation of attorney's fees by multiplying the number of hours the prevailing party's attorney reasonably spent by a reasonable hourly rate. *Id*. The fee applicant has the burden of providing evidence in favor of the requested fee, and the opposing party has the burden of rebuttal "that requires submission of evidence . . . challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "[I]n rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975)." *Id*. at 1402.

Calvert has asked for attorney's fees in the amount of $35,035.50 and costs in the amount of $1,967.98. The fee amount reflects 116 hours of work at a billing rate of $350 per hour for attorneys and $125 per hour for paralegals—rates that Alessi & Koenig has not challenged. Rather, Alessi & Koenig objects to this amount on three other grounds: first, that Calvert prevailed on her FDCPA claims for reasons she did not argue; second, that Calvert's fees should be reduced with respect to her failed NDTPA claims; and third, that Calvert's fees are overblown because of her claim splitting.

The first argument does not give Calvert enough credit. Calvert's FDCPA claim ultimately turned on the distinction between a security interest and a debt under the FDCPA, and Calvert consistently argued that HOA assessments were "debts." More to the point, Alessi & Koenig have failed to show that Calvert's arguments—and the time spent on them—were "unreasonable" within the meaning of § 1692k(a)(3).

Alessi & Koenig's second argument carries more force. Alessi & Koenig contends that Calvert's losses on her NDTPA claims should count against her fee request. Calvert responds that

4

she has achieved an "excellent result," and therefore she should recover "a fully compensatory fee." (Calvert's Reply #59, p. 4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).[3] But the issue is not success or failure, excellent result or mediocre; rather, the issue is that the FDCPA does not award attorney's fees for anything but a finding of FDCPA liability. *See* 15 U.S.C. § 1692k(3) (providing an award of fees "in the case of any successful action *to enforce the foregoing liability*"). Calvert has only requested fees under the FDCPA, and therefore any fees associated with the NDTPA claims—win, lose, or draw—are not compensable. Unfortunately for Calvert, she has not detailed time spent on the FDCPA claims as compared to time spent on the NDTPA claims. Both types of claims were actively litigated up to the summary-judgment stage, but Calvert spent almost all of her summary-judgment stage efforts on the FDCPA claims. Furthermore, Calvert's billing records disclose that about twenty-five percent of her fee request stems from summary-judgment-related efforts. The court accordingly places the appropriate discount percentage at thirty-five.[4]

Alessi & Koenig also requests a reduction based on Calvert's claim splitting. This, too, merits consideration. For example, Calvert claims $525 in fees related to the complaint in each case, though these complaints were filed in violation of the bar against claim splitting and though these complaints were largely copy-and-paste jobs. Similarly, Calvert claims identical amounts in each case for reviewing Alessi & Koenig's responsive pleadings, which are also largely copy-and-paste jobs. Calvert responds that Alessi & Koenig should have moved to consolidate the duplicative suits earlier, but the bar on claim splitting applies to the claim filer, not the opposing party. Similarly, though each additional suit may have required some individualized attention, the

---

[3] Calvert's citation to *Hensley* is misplaced. The cited passage deals with what in this Circuit are regarded as the *Kerr* factors, but Calvert does not address these factors in her briefing.

[4] Calvert may therefore recover, roughly, all fees related to the final 25% of the case plus 50% of fees related to the first 75% of the case. Rounding up, this means that Calvert may recover 65% of her validly requested fees (or, alternatively, that her request is reduced by 35%).

root of any increased expenditure is Calvert's own claim splitting. Therefore, Calvert will not recover fees or costs associated with the member cases.

Finally, Alessi & Koenig requests its own attorney's fees for prevailing on Calvert's NDTPA claims. A federal court applies state law to attorney's fees requests relating to state law claims. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999). The authority for Alessi & Koenig's request lies in NRS § 18.010, which provides that the court may award fees where a claim was brought "without reasonable ground." Alessi & Koenig argues that Calvert's NDTPA claims flouted the plain language of the statute and were therefore groundless.

The court disagrees. The particular licensing statute on which Calvert relied had undergone several recent revisions that materially affected the outcome of her claims. (*See* Order #51, p. 10-11.) Calvert provided credible arguments for her view of the law, including a favorable (to her) interpretation of identical language by the Nevada Attorney General. Therefore, Alessi & Koenig's request will be denied.[5]

### III.  Conclusion

Calvert is awarded a portion of her requested damages and attorney's fees. Alessi & Koenig is not.

IT IS THEREFORE ORDERED that Calvert's Motion for Award of Statutory Damages and Attorney's Fees and Costs is GRANTED in part and DENIED in part. Calvert is awarded $1,000 in statutory damages, $14,716 in attorney's fees, and costs associated with case number 2:11-CV-00333-LRH-PAL only.

///

///

---

[5] Alessi & Koenig briefly suggests that Calvert's losing FDCPA claim was brought in bad faith because it was duplicative. It therefore argues that it is entitled to attorney's fees for this claim under 15 U.S.C. § 1692k(a)(3). The court has already accounted for Calvert's claim splitting, above. And at any rate, Calvert's losing FDCPA claim was certainly arguable and accordingly not "for the purpose of harassment." 15 U.S.C. § 1692k(a)(3).

6

IT IS FURTHER ORDERED that Alessi & Koenig's Motion for Attorney's Fees is DENIED.

IT IS SO ORDERED.

DATED this 22nd of July, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE